## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

PEGASUS INTERNATIONAL INC.                    *CIVIL NO. 6:11-1402

VERSUS                                                          *JUDGE DOHERTY

RON CHAMPAGNE, ET AL.                        *MAGISTRATE JUDGE HILL

### REPORT  AND RECOMMENDATION

Pending before the Court is the Motion to Dismiss or alternatively Motion to Stay and Compel Arbitration [rec. doc. 7] filed by defendants Ron Champagne ("Champagne"), Mike Domingue ("Domingue"), Andre Vizina ("Andre"), Brandon Vizina ("Brandon") and R. Carson Vizina ("Carson"), (collectively, "the defendants").  Plaintiff, Pegasus International, Inc. ("Pegasus") has filed Opposition [rec. doc. 20], to which the defendants filed a Reply [rec. doc. 29].  The Motion has been referred to the undersigned for report and recommendation. [rec. doc. 12].  Oral argument on the Motion was held and the Motion was taken under advisement. [rec. doc. 32].

For the following reasons, it is recommended that the Motion to Stay and Compel Arbitration [rec. doc. 7]  be **GRANTED,** and that the alternative Motion to Dismiss be **DENIED.**  It is further recommended that the defendants' request for assessment of attorney's fees and costs be **DENIED.**

### STATEMENT OF CLAIM

The defendants are former employees of Pegasus, a company that provides engineering, project management and construction management services to oil and gas companies with

offshore operations.  Each of the defendants left their employment with Pegasus and within a few days began working for Pegasus' competitor, Kellogg Brown & Root Services, Inc. ("KBR").  Pegasus alleges that in connection with their employment with Pegasus, each defendant was provided a laptop and external hard drive by Pegasus, which contained confidential business and proprietary information of Pegasus, and that each defendant is now using this information in their current employment with KBR to Pegasus' detriment. Pegasus further alleges that before leaving Pegasus, or shortly thereafter, the defendants secretly met on Pegasus' premises to plan and implement their alleged unlawful activities. These activities are alleged to constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, and are further alleged to be violative of the defendants' fiduciary duties of loyalty and faithfulness.

Pegasus filed the instant lawsuit on July 28, 2011.  In its Complaint and Amended Complaints, Pegasus sets forth the following claims: (1) breach of contract against Champagne, Domingue and Andre; (2) misappropriation of confidential information and trade secrets against each defendant in violation of the Louisiana Trade Secrets Act; (3) unfair trade practices against each defendant in violation of the Louisiana Unfair Trade Practices Act; (4) conversion against each defendant; (5) breach of fiduciary duty against each defendant; and (6) individual and conspiracy claims against each defendant in violation of the Federal Shared Wire and Electronic Communications and Transactional Records Access Act and the Computer Fraud and Abuse Act.

The record reveals that prior to beginning employment with Pegasus, each defendant, except Andre[1], received and signed an Offer of Employment letter containing Pegasus' terms and conditions of the proposed employment, including the following term and condition:

> You must successfully complete Pegasus's required application for employment, Arbitration Agreement (attached herewith), Proprietary Information and Invention Agreement (attached herewith). . . .

[rec. docs. 7-3, pg. 5,  ¶ 11; 7-4, pg. 5,  ¶ 11; 7-6, pg. 4,  ¶ 11; 7-7, pg. 4,  ¶ 11].

The record further contains signed Arbitration Agreements executed by Champagne, Domingue and Andre prior to their beginning employment with Pegasus.  These Arbitration Agreements provide, in pertinent part, as follows:

> 1.  Any claim, dispute or controversy arising out of or relating to the employment relationship, or the validity or breach thereof, including but not limited to any claim of termination, discrimination, harassment, civil rights violation, personal injury or illness claims, working conditions controversies, payment disputes or tort, shall be finally settled by resort of either Employer or Employee to arbitration with a single arbitrator in accordance with the Employment Dispute Resolution Rules of the American Arbitration Association. . . .

[rec. docs. 7-3, pg. 2,  ¶ 1; 7-4, pg. 2,  ¶ 1; 7-6, pg. 2,  ¶ 1].

Each Arbitration Agreement also contains a preamble appearing before the substantive provisions which provides as follows: "By signing this document I agree that all disputes which I have with my Employer must be arbitrated." [*Id.*].  The agreements signed by Champagne and Domingue are countersigned by the President of Pegasus, while the agreement signed by Andre is not.

---

[1] The undersigned does not suggest that Andre did not receive a similar offer letter, only that such a letter is not contained in the record.

3

The record contains no signed Arbitration Agreement for either Carson or Brandon.  By affidavit, however, both Carson and Brandon state that they believe the same Arbitration Agreement was included in the paperwork which they were required to sign when they began employment with Pegasus. [rec. doc. 21-3, pg. 1, ¶ 2; 21-4, pg. 1, ¶ 2].  Carson additionally alleges that he believes that Pegasus lost the Arbitration Agreement he signed, based on the fact that Pegasus apparently lost another document in his personnel file (an I-9 form) since he was asked to sign a duplicate document during his last year of employment. [rec. doc. 21-3, pg. 1-2, ¶¶ 3-5].

By Opposition, confirmed during oral argument, Pegasus agreed that, with respect to Champagne, Domingue and Andre, Arbitration Agreements exist, and at least some of the claims asserted herein fall within the scope of these Agreements.  Pegasus further agreed that it would be proper for this Court to compel arbitration with respect to those three defendants and stay all nonarbitrable claims against those defendants, leaving the decision as to which claims are arbitrable, that is, which claim fall within the scope of the Arbitration Agreement, to the arbitrator.

The remaining controversy involves the remaining two defendants, Carson and Brandon, for which no Arbitration Agreement has been provided to this Court.  Pegasus takes the position that there is insufficient proof for this Court to infer the existence of Arbitration Agreements for either Carson or Brandon.  The defendants, on the other hand, assert that the existence of Arbitration Agreements for both Carson and Brandon may be inferred from the

allegations in their affidavits, as well as the language contained in the Offer of Employment letters which each signed prior to beginning their employment with Pegasus.

For the reasons which follow, the undersigned finds that Arbitration Agreements exist between Pegasus and Carson and Brandon.  The undersigned further finds that the claims asserted against each defendant fall within the scope of the Arbitration Agreements. Accordingly, the undersigned recommends that the instant Motion to Stay and Compel Arbitration should be granted, thus, ordering all arbitrable claims asserted against Champagne, Domingue, Andre, Carson and Brandon to be resolved through arbitration, and further ordering that this suit be stayed pending arbitration.

## LAW AND ANALYSIS

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*., embodies a strong federal policy favoring arbitration. *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Likewise, Louisiana law favors arbitration.  La. R.S. 9:4201.

Courts perform a two-step inquiry to determine whether an order compelling arbitration should be issued. "First, the court must determine whether the parties agreed to arbitrate the dispute. Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims non-arbitrable." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (internal citation omitted).

The Court is not aware of any federal policy or statute that would render the claims asserted herein non-arbitrable, and the parties have not cited the Court to any such authority. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 627, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (noting that even where parties have agreed to arbitrate, an arbitration agreement may be held unenforceable if Congress has expressed an intention that a category of claim should be exempted from arbitration). Accordingly, the only issue presented here is whether or not the parties agreed to arbitrate the disputes which form the basis of this case.

This inquiry, that is, whether the parties agreed to arbitrate the dispute, requires the Court to determine (1) whether there is a valid agreement to arbitrate between the parties and (2) whether the dispute in question falls within the scope of the arbitration agreement. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *Johnson v. Blue Haven Pools of Louisiana, Inc.*, 928 So.2d 594, 597 (La. App. 1st Cir. 2006) *citing Johnson's Inc. v. GERS, Inc.*, 778 So.2d 740, 743 (La. App. 2nd Cir. 2001).

Pegasus essentially contends that no valid Arbitration Agreement exists between it and Carson or Brandon.  This contention is based on Pegasus' claim that there is insufficient evidence for this Court to find that Pegasus offered an Arbitration Agreement to either Brandon or Carson or that these defendants accepted any such offer.  Pegasus further argues that there is insufficient evidence regarding the terms of any such Agreement.

6

Brandon and Carson counter that valid and enforceable Arbitration Agreements exist, containing substantive terms identical to those in effect with respect to Champagne, Domingue and Andre, but that they have apparently been lost or misplaced by Pegasus and, accordingly, are unavailable. They further argue that the unavailability of the Arbitration Agreements does not preclude their enforcement.

The question of whether there is a valid agreement to arbitrate is governed by state contract law. *Fleetwood Enterprises, Inc. v. Gaskamp,* 280 F.3d 1069, 1073 (5th Cir. 2002) *citing First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995) (whether the parties agreed to arbitrate a dispute "is generally made on the basis of 'ordinary state-law principles that govern the formation of contracts.'"). Stated differently, "[w]here the very existence of any agreement is disputed, it is for the courts to decide at the outset whether an agreement was reached, applying state-law principles of contract." *Will-Drill, Inc.*, 352 F.3d at 217.

Two of the three Arbitration Agreements before this Court provide that Louisiana law controls the validity, construction and interpretation of the Agreements.[2]  Moreover, the parties have cited only Louisiana law to this Court.  Accordingly, the Court's analysis will be performed applying Louisiana law.

---

[2]One of the three Arbitration Agreements provides that Texas law, rather than Louisiana law, controls the validity, construction and interpretation of that Agreement.

The existence of a contract and its terms must be proved by a preponderance of the evidence.  *Vignette Publications, Inc. v. Harborview Enterprises, Inc.,* 799 So.2d 531, 534 (La. App. 4th Cir. 2001) *citing Bond v. Allemand*, 632 So.2d 326, 328 (La. App. 1st Cir. 1993). Under Louisiana law, "[a] contract is formed by the consent of the parties established through [an] offer and acceptance." La. Civ. Code art. 1927; *State v. Louis*, 645 So.2d 1144, 1149 (La. 1994).  Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent. La. Civ. Code art.1927; *Vignette Publications,* 799 So.2d at 534 *citing Mitchell v. Fradella*, 628 So.2d 1198 (La. App. 3 Cir.1993).  "In cases where the law does not expressly create a legal presumption of consent from certain facts, it is left to the discretion of the judge to determine if consent is to be implied from the particular circumstances of the case." *Illinois Central Gulf Railway Co. v. International Harvester Co.*, 368 So.2d 1009, 1012 (La. 1979). );  *Vignette Publications,* 799 So.2d at 534 (the "trial judge is given discretion to determine if consent to an agreement may be implied from the particular circumstances of each case.").

Further, when a written instrument has been lost or destroyed, evidence of its contents may be given, provided the party wishing to enforce the instrument shows the loss, "either by direct testimony, or by such circumstances, supported by the oath of the party, as render the loss probable."

In this case, Brandon and Carson argue that there is sufficient evidence before this Court to find the existence of signed Arbitration Agreements, with contents identical to those in effect with respect to Champagne, Domingue and Andre, despite the fact that they have not been produced for this Court's review.  The undersigned agrees.

Under the particular circumstances of this case, consent to be bound by Pegasus' Arbitration Agreement is easily implied.  The identical Offer of Employment letters were sent to Champagne, Domingue, Brandon and Carson.  These letters clearly provide that it was Pegasus' policy to require employees to sign its Arbitration Agreement when the employee was hired.  Tellingly, Pegasus does not dispute that fact.

Furthermore, the Offer of Employment letters signed by Brandon and Carson clearly demonstrate that Pegasus required each of them to execute Pegasus' Arbitration Agreement as a condition of their proposed employment.  Moreover, by affidavit, both state that they believe Pegasus' Arbitration Agreement was included in the paperwork which they were required to sign when they began employment with Pegasus; Carson additionally states his belief that Pegasus lost the Arbitration Agreement he signed, because Pegasus apparently lost another document in his personnel file.

Thus, while neither Brandon nor Carson expressly affirm that they unquestionably signed Pegasus' Arbitration Agreement[3], it is logical to conclude that they did, because in the absence

---

[3]This is reasonable given that with the passage of time it may well be impossible for either Brandon or Carson to remember with the certainty required for the submission of a sworn statement to this Court, that they did, in fact, sign this particular document, along with others which they certainly

of a signed agreement, neither Brandon nor Carson could have begun their employment with Pegasus.[4]

Likewise, there is sufficient evidence in this record to support a finding that the contents of these Arbitration Agreements are identical to those in effect with respect to Champagne, Domingue and Andre.[5]   Given the above evidence, and in particular, Carson's sworn statement setting forth the reason he believes his Arbitration Agreement was lost, makes the defendants' contention that Pegasus lost the Arbitration Agreements probable.  Therefore, evidence of the terms of the Arbitration Agreements may properly be considered.  *See* La.R.S. 13:3740.

In this case, the Court has been presented with three standard form Arbitration Agreements prepared by Pegasus containing identical substantive language mandating that "[a]ny claim, dispute or controversy arising out of or relating to the employment relationship" shall be settled by arbitration.  It is therefore logical for this court to infer that every Arbitration Agreement prepared by Pegasus for execution by every candidate for employment with the company contained this same language.  This is particularly the case given that neither party has presented any argument or evidence suggesting that the Arbitration Agreements of Brandon or Carson were not the same standard form Agreements submitted by Champagne, Domingue and

---

were required to sign by Pegasus.

[4]Both Brandon and Carson remained employed by Pegasus for several years prior to their resignations.

[5]The provisions of the agreements signed by Champagne, Domingue and Andre have identical substantive language.

Andre, or that their Agreements contained any differing language.  Additionally, Pegasus has not provided the Court with any Arbitration Agreement signed by any other employee which contains different terms.

Under substantially similar factual circumstances, the United States District Court for the Middle District of Florida, applying Florida law, found that an Arbitration Agreement existed between a former employer and employee.  *Hudson Global Resources Management, Inc. v. Beck,* 2006 WL 1722353, *5 (M.D. Fla. 2006).  In *Hudson Global* the court was presented with a signed Mutual Agreement to Arbitrate between one defendant-former employee and the plaintiff-former employer.  However, the second defendant-former employee presented only a signed offer of employment letter, setting forth, as one of the conditions of his employment, that he sign "the Company arbitration agreement . . . enclosed for your review and signature." *Id*. at *1.  In referring the claims asserted against both defendants to arbitration, the court found that the failure of the plaintiff and second defendant-employee to sign or execute the Arbitration Agreement referred to, and attached to, the offer of employment letter did not preclude contractual enforcement of the arbitration agreement.  *Id.* at *5.  This was so because the former employee "signed the employment letter that referenced the Agreement and both parties performed under the contract", and "[t]o hold otherwise would thwart the parties' clear intentions expressed at the start of their relationship."

The court in *Hudson Global* further supported its conclusion based on jurisprudence holding that "no signature is needed to satisfy the FAA's written agreement requirement." *Id. at*

*5,*citing Caley v. Gulfstream Aerospace Corp*., 428 F.3d 1359, 1369 (11th Cir. 2005) ("[T]he

plain language of [9 U.S.C.] § 2 requires that the arbitration provision be 'written.' It does not,

however, require that the agreement to arbitrate be signed by either party; nor does any other

provision of the FAA"), *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc*., 10 F.3d 753, 757

(11th Cir. 1993) ("lack of a written arbitration agreement is not an impediment to arbitration")

and *McBro Planning and Dev. Co. v. Triangle Elec. Constr. Co.*, 741 F.2d 342, 344 (11th Cir.

1984) ( citations omitted ).

Additionally, in the absence of contrary evidence, several courts have inferred the

existence of valid arbitration agreements which were lost, or otherwise unavailable, based on

evidence of a practice or custom that a standard form Arbitration Agreement be executed.

*Banks v. Mitsubishi Motors Credit of America, Inc*., 156 Fed. Appx. 710 (5th Cir. 2005: *Anglin*

*v. Tower Loan of Mississippi*, 635 F. Supp.2d 523, 525 fn. 1 (S.D. Miss. 2009); *JP Morgan*

*Chase Bank, NA v. Lott*, 2007 WL 30271, * 3-4 (S.D. Miss. 2007)*; see also Jenkins v. Atelier*

*Homes, Inc*., 62 So.3d 504, 509-510 (Ala. 2010).[6]

Having found that valid Arbitration Agreements exist, the Court must turn to the second

inquiry, that is, whether the dispute in question falls within the scope of the Arbitration

Agreements.  In making this determination, the Court should not consider the merits of the

underlying action. *Snap-On Tools Corp. v. Mason*, 18 F.3d 1261, 1267 (5th Cir. 1994). Instead,

---

[6]These cases were decided under Mississippi and Alabama law.  Louisiana law is similar.  *See*
La. R.S. 13:3740 and La. Civ. Code art. 1832.

the Court "ascertains only whether the arbitration clause covers the allegations at issue." *Id*.
This analysis should take into account the "strong national policy favoring arbitration of
disputes." *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002).  Thus, any
"doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,
whether the problem at hand is the construction of the contract language itself or an allegation
of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at
24-25; *AT&T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650
(1986); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985);
*Pennzoil*, 139 F.3d at 1067. *See also, Gargill Ferrous Intern v. M/V Anotori,* 935 F. Supp. 833,
837 (E.D. La. 1996). "The weight of this presumption is heavy: arbitration should not be denied
unless it can be said with positive assurance that an arbitration clause is not susceptible of an
interpretation that could cover the dispute at issue." *Mar-Len of Louisiana, Inc. v. Parsons-
Gilbane,* 733 F.2d 633, 635 (5th Cir. 1985) *quoting Wick v. Atlantic Marine, Inc.*, 605 F.2d 166,
168 (5th Cir. 1979); *Pennzoil*, 139 F.3d at 1067; *see also Johnson*, 928 So. 2d at 597 *citing
Aguillard v. Auction Management Corp.*, 908 So.2d 1, 18 (La. 2005); *Lakeland  Anesthesia, Inc.
v. CIGNA Healthcare of La., Inc.*, 812 So.2d 695, 698 (La. App. 4th Cir. 2002).  Furthermore,
"ambiguities . . . [are] resolved in favor of arbitration." *Fleetwood*, 280 F.3d at 1073 *citing Volt
Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475, 109

13

S.Ct. 1248, 103 L.Ed.2d 488 (1989).[7]

First, Pegasus has acknowledged that the Arbitration Agreements signed by Champagne, Domingue and Andre cover at least some of the claims made in this lawsuit, and that the suit against them should therefore be stayed pending arbitration.  The Court assumes that Pegasus would make the same acknowledgment with respect to Brandon and Carson.  Nevertheless, the Court will go through the entire analysis for completeness.

The Arbitration Agreements in this case provide that "[a]ny claim, dispute or controversy arising out of or relating to the employment relationship" shall be settled by arbitration.  Because the arbitration provisions use the words "relating to," the provisions are considered as broad provisions "capable of expansive reach." *See Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) ("[C]ourts distinguish 'narrow' arbitration clauses that only require arbitration of disputes 'arising out of the contract from broad arbitration clauses governing disputes that 'relate to' or 'are connected with' the contract.").  Broad provisions such as this one only require that the dispute "touch" matters related to employment. *Id*. at 1068.

Pegasus argues that, while some of its claims fall within the scope of the Arbitration Agreements, "many" of its claims do not arise from, and are not related to, the defendants' employment with Pegasus.  Pegasus characterizes these claims as relating only to the defendants

---

[7]Moreover, under Louisiana law, because the arbitration agreements at issue in this case are contained in a standard form agreement drafted by Pegasus, its provisions, in case of any doubt, must be interpreted in favor of the defendants and against Pegasus.  La. Civ. Code art. 2056.

subsequent employment KBR, since the events giving rise to the claims occurred after the defendants' employment with Pegasus ended, citing as examples, its claims for unlawful competition with Pegasus and its federal individual and conspiracy claims.

Pegasus' argument in unconvincing. As noted by the defendants, the allegations in Pegasus' Complaint refute any argument that Pegasus' claims do not "relate to" or "touch" on matters connected to their employment with Pegasus. Each claim alleges actions or events occurring prior to the defendants' resignation from Pegasus, or which are inextricably connected with actions or events occurring during their employment. Moreover, the crux of this entire dispute flows from the defendants' employment with Pegasus, without which the defendants would never have been able to acquire the alleged misappropriated, converted, altered and deleted confidential and proprietary information of Pegasus; nor would any defendant owe any alleged fiduciary duty of loyalty or faithfulness to Pegasus.

Simply stated, none of the claims before this Court could be maintained against the defendants but for their employment with Pegasus. Accordingly, bearing in mind the strong federal policy in favor of arbitration, this Court concludes that the dispute between Pegasus and the defendants is "related to" their employment with Pegasus, and is therefore arbitrable under Pegasus' extremely broad arbitration provision.

This same result has been reached by other courts under similar factual circumstances. *Nacio Systems, Inc. v. Gottlieb,* 2007 WL 3171271 (N.D. Cal. 2007) (compelling arbitration and staying litigation initiated by former employer against former employee and his new company

15

alleging that the former employee had removed the former employer's proprietary software and customer lists when he left the company, and that the former employee and his new company had been using that software in conjunction with, and for the benefit of, the former employer's competitors, asserting claims including misappropriation of trade secrets, breach of fiduciary duty, unfair competition, theft of corporate opportunity and conversion); *Travelclick, Inc. v. Open Hospitality, Inc.*, 2004 WL 1687204 (S.D. N.Y. 2004) (compelling arbitration and staying litigation initiated by former employer against former employees and their new company alleging claims under the Computer Fraud and Abuse Act, Lanham Act and common law claims relating to the misuse of confidential information acquired by the defendants during their former employment); *GATX Management Services, Inc. v. Weakland*, 171 F.Supp.2d 1159, 1164-1165 (D. Col. 2001) (compelling arbitration, rejecting the former employer's argument that alleged post-employment claims for misappropriation of trade secrets did not arise out of, or relate to, employment because the former employee "would not have has access to the alleged trade secrets and confidential information but for the employment relationship with [the former employer].") *citing Coors v. Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1517-1518 (10th Cir. 1995) (compelling arbitration of claims based upon alleged misuse of confidential and proprietary information obtained during the contractual relationship)*; Law Offices of Bradley J. Hofland v. McFarling*, 2007 WL 1074096 (D. Nev. 2007) (compelling arbitration of claims by former employer against former employee, including claims under the Computer Fraud Abuse Act, breach of fiduciary duty, unfair trade practices by taking and using former employer's

proprietary data and conversion); *George S. May International Company v. Hostetler*, 2004 WL 1197395 (N.D. Ill. 2004) (compelling arbitration on former employer's claims for copyright infringement, violations of the Computer Fraud and Abuse Act, breach of contract and breach of fiduciary duty, and staying nonarbitrable claims).

Pegasus additionally argues that the Arbitration Agreement does not require Pegasus to arbitrate claims brought by Pegasus against its employees but, rather, only requires arbitration of claims initiated by employees against Pegasus.  Thus, Pegasus essentially argues that the Arbitration Agreement is one-sided.  In support, Pegasus cites only the preamble appearing before the substantive provisions of the Arbitration Agreement, which states that "[b]y signing this document I agree that all disputes which I have with my Employer must be arbitrated."

Pegasus' argument is unpersuasive.  First, by its terms, the preamble does not provide that the employer's disputes with its employees are *not* arbitrable.  The preamble requires arbitration of "disputes . . . *with*" Pegasus, not *against* Pegasus.  This language clearly contemplates arbitration of disputes initiated by either party.[8]

Second, the preamble cited by Pegasus does not form a part of the substantive Arbitration Agreement.  It appears clear that the preamble is designed to make sure that the employee is aware of the consequences which will flow from his agreeing to the substantive terms of the Arbitration Agreement.  Further, Pegasus ignores the express language of the substantive

---

[8]This is even more clear when considering the language in view of the strong state and federal policy in favor of arbitration.  See 9 U.S.C. § 1. *et seq*., and La. R. S. 9:4201.

provision of the Arbitration Agreement itself, which mandates arbitration of "[a]ny claim, dispute or controversy arising out of or relating to the employment relationship" at the request of "either Employer or Employee."  This provision clearly does not limit arbitration to only those *claims* brought by the employee against Pegasus.  To the contrary, the provision broadly requires arbitration of *any* claim *or dispute*.  Obviously, Pegasus' lawsuit constitutes a "dispute" within the meaning of the provision.  Further, had Pegasus sought to limit the provision as it now suggests, it could have drafted the provision to reserve its right to avoid arbitration of claims or disputes it may have against an employee, but no such reservation is contained in the Agreement.[9]

The Court's conclusion is supported by the reasoning of the Sixth Circuit in *Bennett v. Cisco Systems, Inc*., 63 Fed. App'x 202 (6th Cir. 2003) which this Court finds persuasive.  In *Bennett*, an arbitration agreement that contained similar "I agree" language was found to bind both parties to arbitration.  *Id.* at 205.  *Bennett* concerned an arbitration agreement between an employee and the employer corporation.  The Sixth Circuit determined that because the language of the Agreement stated that *disputes*, not claims, *with,* not against, the corporation were subject to arbitration the agreement was mutual, and contemplated arbitration of disputes initiated by either party.[10] *Id.*

_____

[9]The Court expresses no opinion on whether or not such a one-sided agreement might well be unenforceable in Louisiana.

[10]The Sixth Circuit focused on the language of the provision which stated that the employee shall arbitrate "disputes" with the employer, not "claims."  *Id*. at 204.  Thus, because the employer's claim

The defendants request dismissal of all claims asserted against them. The FAA provides that when claims are properly referable to arbitration, upon application of one of the parties, the court shall stay trial of the action until the arbitration is complete. *See* 9 U.S.C. § 3; *Alford*, 975 F.2d at 1164.  Although a stay is mandatory, the Fifth Circuit has held that the FAA "was not intended to limit dismissal of a case in the proper circumstances." *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 678 (5th Cir. 1999) *quoting Alford*, 975 F.2d at 1164).  Thus, a district court is not precluded from dismissing an action where all issues are properly subject to arbitration.  *Id.; Alford*, 975 F.2d at 1164.

The Court has determined that the dispute between Pegasus and these five defendants, Champagne, Domingue, Andre, Brandon and Carson, is properly subject to arbitration. However, this court has not determined that all issues involved in this litigation are subject to arbitration.  Claims asserted by Pegasus against KBR and four recently added former Pegasus employees remain pending.  Accordingly, to the extent that some of Pegasus' claims may be ultimately determined to be nonarbitrable, rather than dismissal, this Court should instead stay the litigation between Pegasus and these five defendants pursuant to 9 U.S.C. § 3.

---

against the employee was a "dispute with the Company", the court found the claim was subject to arbitration.  *Id.*  In so holding, the court found that although "[t]he description of the arbitration agreement describes an arbitration initiated by the employee [that description]  does not modify the scope of the arbitration agreement which covers claims by either party."  *Id.*  The court further noted that the use of language  requiring arbitration of "disputes *with*" the company, as opposed to disputes *against* the company, contemplated arbitration of disputes initiated by either party.  *Id.*  Finally, the court was persuaded by the fact that there was nothing in the arbitration provision which reserved the company's right to avoid arbitration in claims against the employee.  *Id.* at fn. 2 *citing Rotondo v. Cisco Systems, Inc.*, no. 00-1755-CIV-MOORE (S.D. Fla. Jan. 31, 2001) (unpublished).

19

The defendants additionally request an award of attorney's fees and costs incurred in connection with the filing of the instant Motion.  In their Motion, the defendants cite no statutory basis for such an award.  Instead, by Reply, the defendants assert that such an award is proper based on this Court's inherent authority to impose sanctions.

Federal  courts are vested with inherent powers, which powers include the power discipline attorneys who appear before it. *Chambers v. Nasco, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123 (1991) *citing  Ex parte Burr*, 9 Wheat. 529, 531, 6 L.Ed. 152 (1824).   However, these implied powers are "to be exercised with great caution" and  "[b]ecause of their very potency, . . . must be exercised with restraint and discretion." *Id. at 43-44 citing citing  Ex parte Burr*, 9 Wheat. at 531 and *Roadway Express*, *supra*, 447 U.S., at 764, 100 S.Ct., at 2463.  A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process, including an assessment of attorney's fees.  *Id.* at 44-45 *citing Hutto v. Finney*, 437 U.S. 678, 689, n. 14, 98 S.Ct. 2565, 2573, n. 14, 57 L.Ed.2d 522 (1978).

The "American Rule" prohibits fee shifting in most cases except those lying within narrowly defined exceptions.  *Id.* at 45.  Of relevance here, a court may assess attorney's fees against counsel pursuant to its inherent powers when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Id.*  at 45-46 *citing Alyeska, supra*, 421 U.S. at 258–259, (internal quotations and citations omitted), *Hall v. Cole*, 412 U.S. 1, 5, 93 S.Ct.1943, 1946, 36 L.Ed.2d 702 (1973), *Newman v. Piggie Park Enterprises, Inc*., 390 U.S. 400, 402, n. 4, 88 S.Ct. 964, 966, n. 4, 19 L.Ed.2d 1263 (1968) (per curiam).   "In this regard, if a court finds 'that fraud

20

has been practiced upon it, or that the very temple of justice has been defiled,' it may assess attorney's fees against the responsible party, as it may when a party 'shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order,'" *Id.* at 46 *quoting Universal Oil,* 328 U.S. at 580, *Hutt*o, 437 U.S., at 689, n. 14.  "The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of 'vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy.'" *Id.*

In this case, the defendants argue that Pegasus delayed producing the arbitration agreements, and then refused to concede that its claims against these defendants were subject to arbitration, in order to avert the need for the filing of this Motion.  While these allegations are harsh, the Court does not find that the alleged actions rise to the level of bad faith, vexatiousness, wantonness, or oppressiveness necessary for this Court to find that a "fraud has been practiced upon it, or that the very temple of justice has been defiled.*"  Chambers, supra*. Accordingly, the defendants' request for assessment of attorney's fees and costs should be denied.

## CONCLUSION

_____For the foregoing reasons, it is recommended that the defendants' Motion to Stay and Compel Arbitration [rec. doc. 7]  be **GRANTED,** and that the alternative Motion to Dismiss be

**DENIED.**   It is further recommended that the defendants' request for assessment of attorney's fees and costs be **DENIED.**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglas v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).**

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

Signed May 10, 2012, at Lafayette, Louisiana.

*C. Michael Hill*

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE